IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CECIL R. SOCKWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | CIV-07-357-D |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff filed his application for benefits on February 23, 2004. (TR 41-44). In his application, Plaintiff alleged that he was unable to work beginning March 2, 2003. (TR 41). Regarding the illnesses, injuries, or conditions that he believed prevented him from working,

Plaintiff alleged that he had arthritis caused by fractured tibia and fibula, malunion of these bones, a right leg that is one inch shorter than his left leg, arthritis in his lumbar, thoracic, and cervical spines, arthritis in both hips, knees, and ankles, pain, adverse side effects of pain medication, and short periods of depression. (TR 77-78). Plaintiff described previous work as an automotive technician, automotive service manager, "partsman," and truck driver. (TR 78). In a subsequent disability statement, Plaintiff described worsening depression. (TR 95). Plaintiff's application was administratively denied. (TR 19A, 20). At Plaintiff's request, a hearing *de novo* was conducted on June 28, 2006, before Administrative Law Judge Thompson ("ALJ"). (TR 432-451). At the hearing, Plaintiff, appearing with counsel, testified, and Plaintiff's wife testified. The ALJ subsequently issued a decision in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 12-19). The Appeals Council declined Plaintiff's request for review of the administrative decision (TR 5-7). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Standard of Review

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196

F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520(b)-(f) (2007); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail). Where a *prima facie* showing is made that the plaintiff has one or more severe impairments and can no longer engage in prior work activity, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given [the claimant's] age, education, and work experience." Grogan, 399 F.3d at 1261; accord,

Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. Analysis

Following the requisite sequential evaluation process, the ALJ found at step one that Plaintiff met the insured status requirements of the Social Security Act and had not worked since March 28, 2003. (TR 14). At step two, the ALJ found that Plaintiff had severe impairments due to "status post right distal tibia and fibula fracture with malunion, [and] osteoarthritis of bilateral knees, cervical, and dorsolumbar spine." (TR 14). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that were disabling *per se*. (TR 14-15). At the fourth step of the evaluation procedure, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level. (TR 16). Considering Plaintiff's description of the exertional requirements of his previous jobs, the ALJ concluded that Plaintiff was unable to perform his past work. (TR 18). Considering Plaintiff's age at the time of the decision, his education, his work experience, and his RFC for work, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act based on the Medical-Vocational Guidelines ("grids"). (TR 18-19).

Plaintiff contends the ALJ erred in relying on the grids at step five in light of Plaintiff's nonexertional impairments due to depression and pain. Plaintiff also contends that the ALJ erred by failing to elicit testimony from a vocational expert at the hearing and by failing to properly consider Plaintiff's Veteran's Administration ("VA") disability rating. The Commissioner responds that no error occurred with respect to the ALJ's evaluation of

the evidence in the record and that there is substantial evidence in the record to support the Commissioner's decision.

Plaintiff contends that the ALJ erred by failing to obtain vocational testimony and relying on the grids because the Plaintiff had mental impairments due to depression and alcohol dependence and a nonexertional impairment due to pain that precluded reliance on the grids. Although Plaintiff posits the ALJ erred at step five of the sequential evaluation process required of administrative factfinders, the Plaintiff's argument is more aptly directed to the step four analysis of the Plaintiff's residual functional capacity.

At step four, the ALJ must "assess the nature and extent of the claimant's physical limitations and then determine the claimant's residual functional capacity for work activity on a regular and continuing basis." Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999)(internal quotations omitted). "If the ALJ concludes that the claimant cannot perform any of his past work with his remaining RFC, the ALJ bears the burden at step five to show that there are jobs in the regional or national economies that the claimant can perform with the limitations the ALJ has found him to have." Id. "When a claimant's exertional level, age, education, and skill level (i.e., work experience) fit precisely within the criteria of a grid rule an ALJ may base a determination of nondisability conclusively on the grids." Id. However, "an ALJ may not rely conclusively on the grids unless he finds ... that the claimant has no significant nonexertional impairment." Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993).

In this regard, "[t]he mere presence of a nonexertional impairment does not preclude

reliance on the grids." Id. The nonexertional impairment "must interfere with the ability to work." Id. Where there is substantial evidence to support the ALJ's findings "(1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level," reliance on the grids for the step five decision is not improper. Id.

  The ALJ's decision includes an extensive, accurate discussion of the medical record in connection with Plaintiff's alleged severe impairments due to depression and alcohol dependence. (TR 14-15). The ALJ found that Plaintiff did not have a severe mental impairment and that Plaintiff had exhibited only mild functional limitations related to his depression. (TR 15). Plaintiff does not point to any evidence in the record showing that he persistently exhibited symptoms or significant functional limitations caused by depression or alcohol dependence. The ALJ's finding of a nonsevere mental impairment is supported by the non-examining agency psychologist, Dr. Kendall, who opined that Plaintiff did not have a medically determinable mental impairment. (TR 338). Although the medical record contains 74 pages of VA treatment records that were not submitted to the agency at the time of Dr. Kendall's assessment, these VA treatment records also support the ALJ's finding of no severe or significant mental impairment. The medical evidence in the record shows that Plaintiff first sought treatment for alcohol dependence and cannabis abuse at his treating VA clinic in February 2005, a year after he filed his application for disability benefits. (TR 189). The initial diagnoses on February 22, 2005, were major depression and alcohol and cannabis

abuse. (TR 187). The treating physician noted that Plaintiff's mood was depressed but there was no evidence of psychosis or mania, and Plaintiff was prescribed antidepressant medication. (TR 187-188). Plaintiff denied any family or social problems. (TR 194). Although the treating physician noted a global assessment of functioning ("GAF") score[1] of 45[2] in February 2005 (TR 187), the physician noted that Plaintiff's GAF score increased to 55[3] just one month later in March 2005 (TR 167, 174). The GAF score assigned to Plaintiff by his treating physician was again increased to 60 in May 2005 and again in July 2005. (TR 145, 412). In March 2005, Plaintiff reported that he was feeling better, that his mood was "much improved," and that the antidepressant medication was "working." (TR 166, 178). Progress notes completed by Plaintiff's treating mental health professionals between March 2005 and August 2005 consistently showed that Plaintiff consistently appeared calm, relaxed, alert, oriented, and attentive, and exhibited clear and coherent thought processes. (TR 135, 136, 137, 138, 140, 141, 142, 144, 147, 148, 149, 150, 151, 152, 154, 155, 156, 157, 158,

---

[1] The diagnosis of mental impairments "requires a multiaxial evaluation" in which Axis I "refers to the individual's primary clinical disorders that will be the foci of treatment" and Axis V "refers to the clinician's assessment of an individual's level of functioning, often by using a Global Assessment of Functioning (GAF), which does not include physical limitations." Schwarz v. Barnhart, No. 02-6158, 2003 WL 21662103, at *3 fn. 1 (10th Cir. July 16, 2003)(unpublished op.)(citing American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994), pp. 25-32).

[2] "A GAF score of 41-50 indicates ... serious impairment in social occupational, or school functioning." Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004).

[3] A GAF score of 51-60 indicates moderate symptoms or impairments in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders 34 (Text Revision 4th ed. 2000).

159, 160, 162, 163, 164, 165, 168, 169, 170, 171, 172, 173, 198, 201, 203, 408, 409-410, 412-413, 414-415, 417, 419, 421-422, 422-423, 423-424, 425). Plaintiff attended anger management classes at his treating VA clinic in June and July 2005. (TR 176, 417-418, 419-420, 421-422, 422-423). However, Plaintiff voluntarily stopped going to these classes because he "got mad down there and left." (TR 397).

In June and July 2005, his treating mental health professionals noted his current diagnosis was unspecified psychosocial circumstance. (TR 417, 419). Plaintiff reported in December 2005 that antidepressant medication prescribed by his treating psychiatrist was helpful in controlling his depressive symptoms. (TR 405). At that time, Plaintiff was described as "alert and in good contact with reality," and Plaintiff reportedly denied any recent substance abuse. (TR 405). In February 2006, Plaintiff attended a medication evaluation session at his treating VA clinic. (TR 397-399). Plaintiff described mood swings. (TR 397). However, the treating psychiatrist noted Plaintiff did not exhibit any abnormalities during a mental status exam. (TR 398). A week later, Plaintiff returned to his treating psychiatrist who again noted that Plaintiff did not exhibit any abnormalities during a mental status exam. (TR 393-396). In March 2006, Plaintiff's treating psychiatrist noted that Plaintiff was seen for a medication evaluation and that Plaintiff exhibited no abnormalities in a mental status exam. (TR 388-389). The psychiatrist noted that a mood stabilization medication was prescribed for Plaintiff. (TR 389-390). In April 2006, Plaintiff returned to his treating psychiatrist for medication evaluation. Plaintiff reported he was sleeping better and experiencing fewer mood swings and less irritation during the day. (TR 384). The

psychiatrist noted that Plaintiff's alcohol dependence was in "sustained remission." The diagnostic assessment at that time noted that bipolar disorder should be ruled out. (TR 385). During the medication evaluations at his treating VA clinic in February and March 2006 the treating psychiatrist, Dr. Dennis, conducted mental status examinations of Plaintiff and noted that Plaintiff was well groomed, exhibited normal speech, engaging, cooperative, and appropriate behavior, appropriate affect, and logical and goal directed thought processes without evidence of delusions, perceptual disturbances, or suicidal or violent ideation. (TR 388-389, 395, 398). There is substantial evidence in the record to support the ALJ's finding that Plaintiff did not have a significant mental impairment due to depression or alcohol dependence which would restrict his ability to work.

With respect to Plaintiff's allegation of a significant nonexertional limitation due to pain, the ALJ's decision reflects his consideration of the medical evidence and Plaintiff's VA disability rating. The record shows that the Department of Veterans Affairs issued a decision on May 16, 2003, awarding Plaintiff individual unemployment benefits effective March 29, 2003. (TR 49). The decision states that Plaintiff's "actual last work day was March 28, 2003," and that Plaintiff was awarded full benefits because he had service-connected "disabilities associated with musculoskeletal disabilities...." (TR 50). Specifically, the rating decision reflected that Plaintiff was determined to have a 30 percent disability for malunion of right tibia and fibula with right ankle disability, 10 percent disability for cervical spine arthritis, 10 percent disability for thoracic spine arthritis, 10 percent disability for lumbar spine arthritis, 10 percent disability for right knee arthritis, and 10 percent disability for left

knee arthritis. (TR 58-63, 65-66).

In connection with his application for disability insurance benefits, Plaintiff stated that he had pain in his back, hips, knees, and ankles, that the pain was sharp and stabbing, that his ankles swelled, and that his "legs will go out." (TR 108). Plaintiff stated that pain had limited his activities for "a little over a year," that it occurred "[d]aily," and that activities such as "bending, squatting, standing, walking, walking to mail box, [and] bending to pick up laundry" caused pain. (TR 108). Plaintiff also stated that medication relieved his pain for short periods of time. (TR 109).

Plaintiff apparently fractured his right tibia and fibula while playing baseball in the military in 1979. (TR 222). The fracture was reset three times in three days and for several years he experienced swelling and pain in his right ankle. (TR 222). In August 2002 Plaintiff was examined at his treating VA clinic and complained of right leg pain since 1979 and lower back pain for about four years. (TR 317). Plaintiff underwent x-rays at that time which were interpreted as showing malunion of the right tibia and fibula, osteoarthritic changes in both knees, osteophytes in the cervical spine, thoracic spine, and lumbar spine. (TR 319-320). X-rays of Plaintiff's lumbar spine in December 2002 showed mild degenerative changes. (TR 208). An x-ray of Plaintiff's left hip in December 2002 showed only a small, benign cyst. (TR 208). In December 2002, Plaintiff was provided a heel insert to equalize his leg length difference, described as a 3/4 inch shorter right leg. (TR 308).

The VA disability rating decision of February 14, 2003, appearing in the record reflects that the VA examiner found malunion of Plaintiff's tibia and fibula in his right leg

and limited range of motion in the right ankle. (TR 59-60). The VA examiner found Plaintiff's back range of motion was "normal but painful" and showed no signs of radiculopathy and that Plaintiff's knee joints were within normal limits and showed "normal but painful" range of motion. (TR 60-63).

At a consultative physical examination conducted by Dr. Metcalf on May 25, 2004, Plaintiff complained of chronic low back pain, pain in both hips, and pain that radiated down his legs to his calves. (TR 322). Plaintiff stated that the pain was relieved with sitting and resting. (TR 322). According to Dr. Metcalf's report of his physical examination of Plaintiff, Plaintiff exhibited normal cervical spine range of motion, some mild limitation of range of motion in his lumbar spine, normal range of motion in his shoulders, elbows, wrists, and fingers, full grip strength in both hands, normal range of motion in his hips, knees, and left ankle, limited range of motion in his right ankle, good muscle strength and tone in his upper and lower extremities, normal heel and toe walking, ambulation at a normal pace, and a slight limp related to a one inch shorter right lower extremity. (TR 323-324). Dr. Metcalf reported that Plaintiff did not exhibit pain with lumbosacral or cervical spine range of motion testing and he did not exhibit chronic pain behaviors. (TR 324, 328).

The medical evidence in the record also shows that on September 23, 2003, Plaintiff was advised at his treating clinic to gradually increase his walking until he could walk briskly for one hour at least three to four times a week. (TR 256). The same advice was given to Plaintiff in June 2004, June 2005, February 2006, and March 2006 by medical professionals at his treating VA clinic. (TR 183, 231, 392, 402). Plaintiff was prescribed a narcotic pain

medication in September 2003 to use as needed for pain. (TR 255). In January 2004, this prescription was terminated, and Plaintiff was advised to lose weight and exercise. (TR 246). In June 2004, Plaintiff's physician prescribed another narcotic pain medication to be renewed only if Plaintiff reached a weight loss target. (TR 235). The narcotic pain medication was not renewed. (TR 233). Plaintiff reported in October 2004 that he was not walking or exercising, and his treating physician noted Plaintiff appeared well-developed, well-nourished, alert, cooperative, and pleasant, and that he exhibited only slight tenderness in the lumbosacral area, the absence of a pulse in his left foot, a loud bruit over the left femoral artery, and a slight limp on his left side. (TR 222). According to his treating physician, Plaintiff's spinal x-rays looked "relatively okay for his age," and it was noted that Plaintiff's primary problem appeared to be peripheral vascular disease in his legs for which laboratory studies were ordered. (TR 223). Plaintiff was encouraged to stop smoking and exercise. (TR 223). Arterial evaluation studies showed no evidence of significant macrovascular occlusive disease. (TR 221).

In his brief, Plaintiff points to his VA disability rating as evidence of the existence of a significant nonexertional impairment due to pain. The VA's disability determination is not binding on the Social Security Administration. 20 C.F.R. § 404.1504. However, "it is evidence that the ALJ must consider and explain why he did not find it persuasive." Grogan v. Barnhart, 399 F.3d 1257, 1262 (10th Cir. 2005). In the ALJ's decision in this case, the ALJ discussed Plaintiff's VA disability rating. (TR 17-18). The ALJ stated that the VA disability rating was not persuasive because no restrictions had been placed on Plaintiff by a treating

doctor and because the RFC finding for the ability to perform light and sedentary work was consistent with the RFC assessment given Plaintiff by the state agency medical consultants. (TR 18).

The state agency consultants' assessments include restrictions of only occasional climbing, balancing, stooping, kneeling, crouching, or crawling. (TR 331). The ALJ noted these restrictions (TR 18) and also noted that pursuant to Social Security Rulings 85-15 and 96-9p the "[n]nonexertional limitations of occasional climbing, balancing, stooping, kneeling, crouching, or crawling would not significantly erode the occupational base for a full range of unskilled sedentary work because these activities are not usually required in sedentary work." (TR 19). The ALJ's decision reflects adequate consideration was given to Plaintiff's VA disability rating, and no error occurred in this regard.

Although Plaintiff states in his reply brief that the record provides "overwhelming" evidence of Plaintiff's back, leg, and hip pain, many of the pages referenced by Plaintiff do not contain medical findings of pain but include only diagnostic assessments of degenerative joint disease or arthritis. Some of the pages recited by Plaintiff reflect only Plaintiff's then-current medication regimen which included pain medication. Many of the pages cited by Plaintiff contain Plaintiff's subjective assertions of back, hip, and leg pain, reflect assessments of abdominal or tooth pain, or reflect medical treatment of Plaintiff during 2002 before he stopped working. Thus, Plaintiff has exaggerated the medical evidence in the record. Although the record reflects, and the ALJ expressly considered, that Plaintiff has been prescribed pain medication for his complaints of back, hip, and leg pain, there is no

evidence in the record of persistent medical findings of severely restricted range of movement of Plaintiff's back, hip, or legs due to pain or a pain-causing impairment, and there is no evidence in the record of restrictions placed on Plaintiff's ability to work by his treating physicians. To the contrary, Plaintiff's treating physicians have on several occasions encouraged him to exercise regularly.

The ALJ's decision reflects consideration of the medical and nonmedical evidence consistent with the proper framework established in Hargis v. Sullivan, 945 F.2d 1482 (10th Cir. 1991), for analyzing Plaintiff's complaint of severe, disabling pain. (TR 16-18). There is substantial evidence in the record to support the ALJ's finding that Plaintiff has the RFC for light or sedentary work and that Plaintiff's RFC for work is not restricted by nonexertional impairments. Moreover, no error occurred concerning the ALJ's failure to obtain vocational testimony.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before ___January 3rd___, 2008, in accordance with 28 U.S.C. § 636 and LCvR 72.1. The parties are further advised that failure to file a timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. Moore v. United States,

950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ___14th___ day of ___December___, 2007.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE